THE KNICKERBOCKER TRUST COMPANY

*v.*

THE PENN CORDAGE COMPANY, et al.

[Filed June 13th, 1903.]

1. In cases where personal property is mortgaged without change of possession, the chattel mortgage is void as to creditors of the mortgagor, unless it be recorded in the book directed by the chattel mortgage statute to be provided.

2. The record of a chattel mortgage in the real estate mortgage book does not relieve the chattel mortgage of its invalidity as to the creditors of the mortgagor.

3. Whether the failure to record a chattel mortgage according to the statute is the fault of the mortgagee or of the clerk is not material. The statute declares a chattel mortgage to be void as to creditors of the mortgagee unless certain things be done; one of these is that it be recorded according to the statute. The chattel mortgage is, in law, void as to such creditors, unless it is, in fact, recorded as required by the statute.

On bill, answer and proofs, upon reopening of testimony.

This cause was heretofore argued *in extenso*, and an opinion given on the whole case. See *17 Dick. Ch. Rep. 624*. On hearing that argument the vice-chancellor understood from counsel then present, that the complainant admitted that its mortgage had not been recorded as a chattel mortgage, and that it was ineffectual as a chattel mortgage against the claim of the creditors of the defendant Penn Cordage Company, mortgagor.

When that opinion was pronounced the counsel for the complainant insisted that it was not intended by him to admit the invalidity of the complainant's mortgage as a chattel mortgage; that he had supposed that he had submitted that point to the vice-chancellor for consideration and determination. The counsel for the defendants were consulted as to this misunderstanding, and, by agreement, the testimony in the cause has been reopened on the single point: "Is the complainant's mortgage

valid, under the Chattel Mortgage act, against the claim of the creditors of the mortgagor?" This question has been argued by counsel upon the following stipulation and admission of facts:

"It is stipulated and agreed by and between the parties hereto as follows:

"(1) That on or about April 7th, 1896, the original mortgage from the Penn Cordage Company to the Knickerbocker Trust Company, as trustee, dated February 1st, 1896, which has heretofore been put in evidence and marked *Exhibit C 5* herein, was sent to the clerk of Burlington county, Mount Holly, New Jersey, enclosed in a letter, which was in the following terms:

"April 7th, 1896.

"DEAR SIR—At the request of the Knickerbocker Trust Company of this city we enclose a discharge of mortgage recorded in your office, executed by William Keen to Adolph Segal, the discharge being executed by Howard Lippincott, Segal's assignee.

"Kindly satisfy this mortgage of record in your office, and simultaneously record in your office the enclosed mortgage covering the same property, executed by the Penn Cordage Company to the Knickerbocker Trust Company as trustee.

"On receipt of a memorandum of your fees for satisfying the old mortgage and recording the new one, we will promptly remit.

"So soon as the old mortgage is discharged of record and the new one recorded, kindly wire the Knickerbocker Trust Company, No. 66 Broadway, this city, to that effect, at the expense of the trust company.

"Yours very truly,

"DAVIES, STONE & AUERBACH.

"To the Clerk of Burlington County,
     Mount Holly, N. J.

"(2) That the mortgage executed by William Keen to Adolph Segal, referred to in said letter, had theretofore been duly recorded as a mortgage of real property in a book set apart for the recording of real estate mortgages, and also as a chattel mortgage, in a book set apart for the recording of chattel mortgages, by the clerk of Burlington county, and that the discharge of said mortgage, referred to in said letter was likewise duly recorded and entered in both of said books. That said new mortgage, to wit, said mortgage from the Penn Cordage Company to the Knickerbocker Trust Company, as trustee, was thereafter, to wit, on the tenth day of April, eighteen hundred and ninety-six, recorded by the clerk of Burlington county, New Jersey, in a book kept by him, and designated Book A 4 of Mortgages, at page 458, etc., which book was one of the books provided by the clerk of the county for registering or recording mortgages of lands, tenements and hereditaments lying and being within his county.

"(3) That the original was returned to the Knickerbocker Trust Company by the clerk of Burlington county, New Jersey, bearing the following endorsement, subscribed by said county clerk:

"Received April 10th, 1896, recorded in the clerk's office of Burlington county, at Mount Holly, in Book A 4 of Mortgages, folio 458, etc.

"WILLIAM W. WORRELL,
"*Clerk.*

"(4) That the said mortgage or conveyance heretofore marked *Exhibit C 5*, intended to operate as a chattel mortgage, was not, in fact, accompanied by an immediate delivery nor followed by an actual or continued change of possession of the things mortgaged.

"(5) That the clerk of Burlington county, from the time chattel mortgages were required to be recorded, and prior to and upon April 10th, 1896, kept two sets of books in his office, one set of which was provided for registering or recording all mortgages of lands, tenements and hereditaments lying and being within his county, and the other of which was provided for the purpose of recording therein the instruments by the acts concerning chattel mortgages directed to be recorded; that the mortgage in question was recorded in said Book A 4, which was a book of the former set, and was not recorded in a book of the latter set.

"Counsel being present it is agreed that Mr. Humphreys, counsel for complainant, will serve copies of his brief on all counsel in the case, with the exception of Mr. Archer, who has notified Mr. Humphreys that his client is not interested in this particular dispute, and that said counsel will reply to said brief within seven days thereafter, and serve a copy of their briefs upon Mr. Humphreys, who will reply thereto within seven days."

The truth of the facts contained in stipulations 1, 2, 3, 4 and 5 is admitted. Counsel for defendants object to the admission of the facts set forth in stipulations 1 and 2 as being irrelevant. Counsel for the complainant object to the admission of the facts set forth in stipulation 5 as being irrelevant.

*Mr. John B. Humphreys,* (with *Messrs. Davies, Stone & Auerbach,* of the New York bar), for the complainant.

*Mr. Charles V. D. Joline,* for the defendant Claud S. Fries.

*Mr. Joseph H. Gaskill,* for the defendant the Pennsylvania Railroad Company, a judgment creditor.

GREY, V. C.

Two objections are made against the validity of the complainant's mortgage as a chattel mortgage.

*First.* It is contended that the affidavit of consideration does not sufficiently state the consideration of the mortgage. The

whole case shows that the true consideration of the mortgage was the securing the payment of the bonds described in the mortgage. The affidavit declares it to be "to secure the payment of $100,000 of the bonds described in said mortgage." The inquirer is thus referred to the mortgage itself, to which the affidavit is appended, for further information as to the details of the consideration. He there finds a full statement of the scheme for the raising of money by the issue of bonds to be secured by this mortgage. It differs in no essential particular from the usual methods followed in effecting the issue of bonds upon the security of corporate property. The affidavit of consideration, taken with the statements in the mortgage itself, to which it refers, sufficiently meets the requirements of the statute (*Gen. Stat. p. 2113 § 52*), as interpreted in the case of *Fletcher* v. *Bonnet, 6 Dick. Ch. Rep. 615,* by the court of appeals, where it was held that an express reference in the affidavit of consideration to the matters contained in the mortgage, made the recitals thus referred to a part of the affidavit.

The complainant's mortgage is not invalid as a chattel mortgage for want of a proper affidavit of consideration.

*Secondly.* The defendants insist that the complainant's mortgage was not recorded as a chattel mortgage in the manner required by the Chattel Mortgage act. This is the substantial ground on which the complainant's mortgage is challenged.

It is undisputed that this mortgage was not recorded as a chattel mortgage in the book provided by the county clerk for that purpose.

It was, however, recorded in the book provided by the clerk for the record of real estate mortgages, and this record preceded the claims of the defendant creditors, who now challenge its validity as a chattel mortgage.

The complainant insists that a chattel mortgage becomes recorded, within the meaning of the Chattel Mortgage act, from the moment it is lodged with the clerk for record, and is ostensibly received by him for that purpose; that although it may be recorded in the wrong book, or may never be recorded in fact, yet it is, from and after its deposit with the clerk, forever recorded in law, and that creditors (who, if they examined the

chattel mortgage books, would, as a matter of fact, find no record of any such mortgage) must be held, as a matter of law, to have had constructive notice of the deposited, though mis-recorded or non-recorded, mortgage.

The system of constructive notice, based on the various recording acts, is purely statutory. To ascertain whether an instrument has been so recorded as to give constructive notice of its existence, the requirements of the statute, which makes the record of that particular instrument notice, must be observed.

At the common law, the fact that the possession of chattels remained with the chattel mortgagor was, as between creditors of the mortgagor and the mortgagee, of itself *prima facie* evidence that the mortgage was fraudulent. *Miller* v. *Pancoast, 5 Dutch. 250, 254; Fletcher* v. *Bonnel, 6 Dick. Ch. Rep. 619 (Court of Appeals).*

While this presumption attended the chattel mortgage, it was held that the chattel mortgagee might relieve himself of the presumption that his mortgage was fraudulent, by proof that the leaving of the goods in the possession of the chattel mortgagor was not, in fact, fraudulent. *Runyon* v. *Groshon, 1 Beas. 86; Miller* v. *Pancoast, 5 Dutch. 254; Roe* v. *Meding, 8 Dick. Ch. Rep. 355; affirmed on appeal, 8 Dick. Ch. Rep. 365.*

The state of the law in 1858 (when *Runyon* v. *Groshon* was decided, declaring chattel mortgages to be, *prima facie,* fraudulent, when unaccompanied by change of possession of the mortgaged goods) tended to prevent the use of personal property as a basis of credit, unless by way of pledge and actual delivery of possession. It placed the holder of a chattel mortgage at the disadvantage that his security was, *prima facie,* deemed to be fraudulent, and put upon him the burden of affirmatively proving that it was taken without fraudulent purpose.

In order to enable the owner of personalty, while retaining its possession, to mortgage its value, and to relieve the holder of such a mortgage from the imputation of fraud, and, at the same time, to warn all who might give credit to the owner, because of his possession of the goods, that there was an outstanding claim upon them, the first chattel mortgage statute was passed.

That act declared that every conveyance intended to operate as a mortgage of goods and chattels which should not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, should be absolutely void, as against the creditors of the mortgagor, unless the mortgage, or a true copy thereof, should be filed as directed in the succeeding section of that act. *P. L. of 1864 p. 493 § 1.*

The succeeding section directed that the chattel mortgage should be filed in the clerk's (or register of deeds) office, and that that officer should endorse thereon the time of receiving the same.

The other provisions of the act of 1864 direct the filing a copy of the chattel mortgage and statement exhibiting the interest of the mortgagee, under penalty that the mortgage should cease to be valid, as against creditors, if that were not done as prescribed by that statute.

If the mortgagee obtained his mortgage to be filed as directed by the act, he was relieved from the presumption that it was fraudulent. The burden of seeing that the statutory requisites were actually performed was cast upon him. If they were not observed, his mortgage was void as to creditors of the mortgagor.

While that statute was in force, if a chattel mortgage had been sent to a clerk's office by a mortgagee, and had been received by the clerk, but had not, in fact, been filed by him, as directed by the second section, it would, as against creditors of the chattel mortgagor, have been void by the express words of the statute. Nothing in the act declared that depositing it with the clerk relieved it of the statutory invalidity which attached if it was not filed. Nor did the act declare that sending or delivering it to the clerk was a filing of it. It was void, as to creditors, if not filed as directed by the act, no matter how that incident was occasioned.

In 1885 the Chattel Mortgage act was revised, and so changed, that, instead of filing the chattel mortgage in order to make it valid against the creditors of the mortgagor, it was required that it should be recorded. *P. L. of 1885 p. 319.*

It is the provisions of this act which affect the chattel mortgage presently in controversy.

The fourth section of the act of 1885 declares:

"That every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, *shall be absolutely void as against the creditors of the mortgagor* and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder or holders of said mortgage, his, her or their agent or attorney, stating the consideration of said mortgage, and as nearly as possible the amount due and to grow due thereon, *be recorded as directed in the succeeding section of this act;* provided, that nothing contained in this act shall be taken, construed or held to apply to any mortgage of personal property included in a mortgage of franchises and real estate heretofore or hereafter made by any railroad company, and which hath been or shall be recorded or registered as a mortgage of real estate in every county in which such railroad, or any part of it, is or shall be located, and it shall not be necessary to record as a chattel mortgage any such mortgage as is in this proviso described."

The court of errors and appeals has declared that the same legislative purpose which inspired the previous act requiring the filing of a chattel mortgage, attends upon the new act requiring that it be recorded. *Roe* v. *Meding, 8 Dick. Ch. Rep. 367.* Both statutes are intended to protect the creditors of the mortgagor. *Ib. 366.*

The phrasing of this act indicates a clear legislative intent that chattel mortgages shall be void, as against the creditors of the mortgagee, in cases in which possession is not taken of the chattels mortgaged, unless certain named incidents prescribed in the act are performed. The fourth section, as above shown, requires that an affidavit of the holder be annexed stating the consideration of the chattel mortgage and the amount due and to grow due thereon, and that the mortgage be recorded as directed by the succeeding section of the act. The fifth indicates in what county its record shall be made. The sixth prescribes that no mortgage shall be recorded unless it be acknowledged or proved, and the acknowledgment or proof be certified thereon.

The seventh section provides that the clerk shall record the

chattel mortgages in accordance with the provisions of the act, and that he shall enter at the foot of the record of each instrument *so recorded,* the time when it was received by him to be recorded, and shall endorse on each instrument *when recorded as aforesaid,* the time when the same was delivered to him *to be recorded,* with the book and page in which the same *has been recorded.* These are all prescriptions of the duties of the clerk, and do not deal with the effect of the record as notice to creditors of the mortgagor. Nothing either in this section or any other part of the statute prescribes that the clerk's entry at the foot of the record, or endorsement on the mortgage, of the time when it was received, shall, as against a creditor, be evidence that the mortgage was from that time to be deemed to have been recorded. Nothing in the act provides that the clerk shall, *when he receives the chattel mortgage,* mark on it the time when he receives it, and record it as of that date. The statute directs these things to be done *after the chattel mortgage has been recorded.*

The observance of these requirements of the seventh section may oblige the clerk to record a chattel mortgage as soon as it is received. This is somewhat inconvenient, but is in no essential particular different from the necessity to enter a judgment and record an execution as soon as received, in order that their lien may at once be effectual.

In every section in which the statute deals with the time when the chattel mortgage shall become valid against creditors, that time is declared to be when it is recorded, and in direct terms it further prescribes that if not recorded according to the requirement of the statute, the chattel mortgage shall be void.

In order that a chattel mortgage shall be valid, it is imperatively necessary that the statutory prerequisites shall be performed. *Graham Button Co.* v. *Spielman, 5 Dick. Ch. Rep. 123; affirmed on appeal, 5 Dick. Ch. Rep. 796.* A failure to perform any one of them leaves the chattel mortgage absolutely void as to the creditors of the mortgagor. The same principle runs through the discussion of the Chattel Mortgage act in the case of *Roe* v. *Meding, 8 Dick. Ch. Rep. 350,* in the court of appeals.

By far the most important of these statutory requirements

for the protection of creditors is that which prescribes that the chattel mortgage must be recorded as directed by the succeeding section of the act. Although every other statutory essential may have been performed, all are of no value, as notice to the creditors of the mortgagor, unless the chattel mortgage be recorded as required by the statute. It is this final act which, in law, notifies the creditors of the mortgagor. The latter, knowing that constructive notice is given them by the statutory record, may protect themselves by examining the record which the statute directs to be made.

The complainant's contention that its chattel mortgage was, in contemplation of law, recorded from the moment it was lodged with the clerk is opposed by the express words of the act itself, which, in terms, declares that a chattel mortgage is void unless it be recorded.

At the time the act respecting chattel mortgages was passed, in 1885, the recording act concerning deeds provided that, if a deed were either recorded or "lodged for that purpose with the clerk," it should operate as notice. *Sup. Rev. 1886* (*tit. "Conveyances"*) *p. 133 §§ 8, 9.* The statute which provided for the recording of real estate mortgages also declared that, if a mortgage be recorded or "lodged for that purpose with the clerk," it should be notice. *Rev. 1877* (*tit. "Mortgages"*) *p. 706 § 22.*

This course of legislation upon a kindred subject, existing when the act was passed which provided for recording of chattel mortgages, shows, that when the legislature intended to make the lodging for record as effective as the record itself, it definitely expressed that purpose. Deeds and real estate mortgages had theretofore been declared recorded when lodged for that purpose. Chattel mortgages were required to be actually recorded. Lodging for record was not declared to be effectual as to them.

The ninth section of the Chattel Mortgage act is also explicit in its declaration that

"every chattel mortgage *hereafter recorded* pursuant to the provisions of this act, shall be valid against the creditors of the mortgagor and against subsequent purchasers and mortgagees *from the time of the recording* thereof,"

not from the time it shall be lodged with the clerk for record.

This prescription of the terms upon which chattel mortgages theretofore presumptively ·fraudulent, should be held to be valid, was entirely with the legislative power. It is not for the courts to extend to them greater privileges to the disadvantage of creditors, which the legislature has seen fit to withhold. The words of the statute, requiring chattel mortgages to be recorded in order to be valid, have a clear and intelligent meaning. No construction by the courts should change the plainly-expressed will of the legislature.

It must be held that a chattel mortgage is void as against the creditors of the mortgagor, unless it be actually recorded as required by the chattel mortgage statute.

The next question is whether the complainant's chattel mortgage was in fact recorded as required by the statute.

It appears by the stipulation that the complainant's chattel mortgage was recorded in the real estate mortgage book, but not in the chattel mortgage book. The complainant contends that if a chattel mortgage is recorded in the clerk's office, it is a sufficient compliance with the requirements of the fourth section.

Any examination of the chattel mortgage statute makes it entirely clear that it was the legislative purpose in passing that act to prescribe ·a method whereby chattel mortgages (which theretofore could not be recorded) might thereafter be recorded, and thus be relieved from the imputation of fraud and from the inconvenience which attended upon the preservation and examination of a file. The things which the statute requires to be done in order to relieve the chattel mortgage from the declaration that it is absolutely void are, as above stated, in the nature of conditions. The statute directs (section 7) that the clerk shall provide books in which to record chattel mortgages.

The stipulation in this case admits that the clerk of Burlington county, in compliance with the provisions of the Chattel Mortgage act, had provided and kept books for the recording of chattel mortgages. These books were separate and distinct from the books in which real estate mortgages were recorded. This practice accords with the provisions of the Chattel Mortgage act, and is, I believe, invariable in every county in the state.

Knickerbocker Trust Co. *v.* Penn Cordage Co.

It is not contended that the statute directs that chattel mortgages should be recorded in the real estate mortgage books, but the defendant insists that the provisions of the fifth section are fully observed when the chattel mortgage is recorded in the clerk's office, no matter in what book.

If such be the meaning of the statute, then chattel mortgages may be recorded in deed books or judgment books, or in the minutes of the courts, or, indeed, in any book, so that it be in the clerk's office. Such a construction would defeat the whole design of the statute, which clearly arranges for and contemplates the recording of chattel mortgages in a book to be specifically provided for that purpose by the clerk, which creditors may examine in order to ascertain whether a party in possession of chattels has mortgaged them.

It is a recording in this chattel mortgage book, provided for by the chattel mortgage statute, which the law recognizes as a recording. It is this book which the intending creditor of the mortgagor examines to see whether his possible debtor has given a chattel mortgage upon the goods, the possession of which by him might lead the intending creditor to give him credit. A recording in the real estate mortgage book is no more a compliance with the provisions of the Chattel Mortgage act than would be a recording in a deed book or any other book not recognized by the chattel mortgage statute.

To hold that such a recording of a chattel mortgage is effectual would be to make the statute and the record not a protection to creditors of the chattel mortgagee, but a trap to mislead and deceive them.

The complainant insists that its mortgage, as a charge upon the personalty, ought not to be held invalid because of the omission of the clerk to record it in the proper book; that it ought not to be held responsible for the mistake or omission of a public officer.

The chattel mortgage statute declares that certain things must be done in order to prevent a chattel mortgage from being held invalid. Several of these things must be done by public officers. The affidavit showing the consideration of the chattel mortgage must be taken before some officer authorized to take

affidavits. He may omit to annex or sign the jurat. This would invalidate the record. The execution of the chattel mortgage is required by the act to be acknowledged, and the acknowledgment to be certified on the mortgage. This must be done by a public officer. If he insufficiently does it, or omits to do it, the record of the chattel mortgage is insufficient. Both these fatal defects might arise by the omission of public officers. The reason they destroy the efficiency of the chattel mortgage as against creditors of the mortgagor is, that they show that the statutory requirements have not been performed. The provision of the statute requiring the recording of the chattel mortgage by the clerk, is as essential as the requirement that the affidavit of consideration be made, or that the acknowledgment be certified. The failure to perform any of these essentials for any reason, no matter by whose fault, invalidates the mortgage as to creditors of the mortgagor. The statutory conditions are not fulfilled.

Under this construction of the statute the actual record of a chattel mortgage, in the chattel mortgage book provided by the statute, is a necessity to its validity as against creditors of the chattel mortgagor. From this point of view it is of no significance whether the omission efficiently to record the complainant's mortgage as a chattel mortgage, was occasioned by the fault of the complainant or of the clerk.

The transaction regarding the recording of this mortgage took place wholly by correspondence between the complainant company and the clerk, so that it is possible to know with certainty just what the clerk was instructed to do. The stipulation sets forth a copy of the letter of instructions which the complainant sent to the clerk with the mortgage when it was forwarded to him for recording.

If the omission of the clerk to record this paper as a chattel mortgage has any relevancy in this case, all his responsibility was cast upon him by this letter. An examination of the complainant's letter will show that the circumstances under which the paper was sent for record, leave it in some doubt whether the failure to record it as a chattel mortgage was the fault of the complainant or of the clerk.

It may, I think, be forcefully argued that the duties of the clerk in recording instruments are ministerial, not judicial; that it is his business to record any paper sent to him in that book, in which, by law, such a paper should be recorded, if the paper itself, or the instructions sent him indicate to a layman's comprehension in what book the paper should be recorded; but that if the paper does not itself plainly indicate its character, and the letter of instructions does not direct the clerk in which book it should be recorded, it is not the clerk's duty to decide in a judicial way, the legal effect of the instrument and to record it accordingly.

The instrument in this case is endorsed "Mortgage," not "*Chattel* Mortgage." Nothing in the way of endorsement indicated that it was a chattel mortgage. Its contents, if read by one who knew the requisites of a chattel mortgage, showed that it had those characteristics. Whether it is the duty of the clerk to pass such a judgment upon instruments sent for record, and to record them accordingly, is, I think, somewhat doubtful. The complainant's letter did not inform the clerk that the paper sent was a chattel mortgage, nor did it instruct the clerk to record the paper as a chattel mortgage. Whether, under such circumstances, the clerk was bound to have recorded the paper in question as a chattel mortgage also appears to me to be doubtful. He did not endorse upon the paper any certificate that he had recorded it as a chattel mortgage.

If the clerk received explicit orders to record a chattel mortgage in the chattel mortgage book, and for any reason failed to do so, that mortgage would be invalid as to creditors. If the clerk's omission to perform his duty to the mortgagee works an injury to the mortgagee, he has his remedy against the clerk for damages, and cannot maintain that the clerk's failure makes as effectual a record as against the creditors of the mortgagor, as if the instrument had actually been recorded.

It seems to me, however, that it is not necessary to decide these questions as to whose fault it was that the mortgage was not recorded in the chattel mortgage book. The statute, in my opinion, requires that the chattel mortgage, in cases where no possession is taken of the goods mortgaged, must, in order to be

valid against the creditors of the mortgagor, be actually recorded in the book directed by the statute to be provided. If it be not so recorded, the chattel mortgage is void as to such creditors, no matter what may have occasioned the omission to record it as required by the statute.

A decree will be advised in accordance with the views above expressed.